## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

_____
                                    )
In re:                              )
                                    )    Chapter 7
ELEANOR MARIE VIERSTRA,             )    Case No. 12-31540-HJB
                                    )
           Debtor                   )
                                    )
_____)

### MEMORANDUM OF DECISION

Before the Court is the "Trustee's Objection to Debtor's Homestead Exemption" (the "Objection") filed by David W. Ostrander, the Chapter 7 trustee (the "Trustee") in this Chapter 7 case filed by Eleanor Marie Vierstra (the "Debtor"). The Objection challenges the Debtor's exemption asserted under Massachusetts General Laws ch. 188, §§ 1 et seq. (the "Homestead Statute") and Massachusetts General Laws ch. 235, § 34(14) (together, the "Homestead Exemption"). Among the issues presented is whether the Trustee's Objection is timely in light of Newman v. White (In re Newman), 428 B.R. 257 (B.A.P. 1st Cir. 2010), and the subsequent amendment of Federal Rule of Bankruptcy Procedure Rule 2003(e).[1] For the reasons set forth herein, the Court concludes that the Objection raised by the Trustee is untimely and must therefore be overruled.

---

[1] All references to the "Bankruptcy Code" or to Code sections are to the United States Bankruptcy Code unless otherwise specified, see 11 U.S.C. §§ 101 et seq.; all references to "Bankruptcy Rule" or "Rule" are to the Federal Rules of Bankruptcy Procedure.

1

I.   FACTS AND POSITIONS OF THE PARTIES

Although there is a dispute regarding the credibility of the Debtor's stated intention to return to the subject property, the facts necessary to decide this matter are free from material dispute.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 12, 2012.  On the petition, she listed as her "street address" a location in Easthampton, Massachusetts and as her "mailing address" a post office box in Northampton, Massachusetts.  In identifying her interests in real property on Schedule A, however, the Debtor listed a tenancy by the entirety interest in real estate located in Florence, Massachusetts (the "Florence Property").  She further described the Florence Property as "subject to a Declaration of Homestead," recorded in 2008.  In her Schedule C - Property Claimed as Exempt ("Schedule C"), the Debtor claimed that her interest in the Florence Property was exempt pursuant to Massachusetts General Laws ("MGL") ch. 235, §24(14) and ch. 188.  The Debtor values the Florence Property at $100,000,[2] and on Schedule D – Creditors Holding Secured Claims, lists outstanding encumbrances on the Florence Property totaling $35,497.

A meeting of creditors under § 341 of the Code (the "341 Meeting")[3], was scheduled for and held on November 6, 2012.  At that meeting, and in subsequent communications between the Debtor and the Trustee, the Debtor disclosed that she and her now estranged spouse acquired the Florence Property in 1988, but she has lived in Easthampton since 2008.  Her husband has resided in the Florence Property continually

---

[2] In his papers, the Trustee has expressed doubt with respect to the accuracy of that valuation.
[3] In practice, this meeting is most often between the Chapter 7 trustee and the debtor, with few, if any, creditors in attendance.

2

since 2008, except for approximately one year when he lived in Las Vegas to attend to his father's health problems. Even during her husband's absence from the Florence Property, however, it remained vacant; the Debtor did not return to the Florence Property during that time. After the Trustee finished his examination at the 341 meeting, he reportedly announced that the meeting was adjourned, but not concluded. No date was at that time, or subsequently, set for a continuation of that meeting.

On December 28, 2012, the Trustee filed the instant Objection. There, he contends that the Homestead Exemption for the Florence Property is not available to the Debtor. The Trustee maintains that, even though the Debtor filed a Declaration of Homestead for the property, the Homestead Exemption is available only to "the owner and the owner's family members who occupy or intend to occupy the home as a principal residence." The Trustee argues that, by her actions, the Debtor long ago abandoned the Florence Property as her principal residence.

The Debtor takes a different view, grounded in three arguments. First, she contends that she has always viewed the Florence Property as her home, and has resided in Easthampton with her son solely because she became estranged from her non-debtor spouse. Accordingly, she says that, on the date the bankruptcy case was commenced, she had a future intention to occupy the Florence Property as her principal residence. Second, the Debtor argues that, because her spouse has resided in the Florence Property as *his* principal residence and co-owns the property, she is entitled to the benefit of *his* automatic exemption under the Homestead Statute as his "family member."[4]

---

[4] The non-debtor spouse is not a co-signatory on the Declaration of Homestead. Nevertheless, the Debtor is correct that a homestead exemption, albeit in a lesser amount, is now available to

3

And third, she says that the Trustee's Objection is untimely because it was not filed within 30 days from the conclusion of the 341 Meeting, as required by Bankruptcy Rule 4003(b)(1). In the Debtor's view, the 341 Meeting, which was not continued to a specific date and time, was *concluded* on November 6, 2012, thus establishing December 6, 2012 as the deadline for filing objections to the Debtor's claimed exemptions. Accordingly, the Debtor says, the Objection - not filed until December 28, 2012 - is untimely and must be overruled.

II. DISCUSSION

Pursuant to § 541 of the Bankruptcy Code, all of a debtor's prepetition property, with certain exceptions not here material, become property of the debtor's bankruptcy estate. See 11 U.S.C. § 541(a). However, pursuant to § 522(b)(1), a Massachusetts debtor may exempt interests in certain property from the bankruptcy estate by electing either the exemption scheme set forth in § 522(b)(2) (those listed in § 522(d)) or § 522(b)(3) (the non-bankruptcy exemptions").[5] 11 U.S.C. §§ 522(b)(1), (2), (3).

Section 522(l) directs the debtor to file a list of his or her claimed exemptions (the debtor's "Schedule C") and provides that "unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 541(l); see also Fed. R. Bankr.

---

Massachusetts homeowners, regardless of whether they have filed a declaration of homestead. See MGL ch. 188, § 4 (eff. March 16, 2011).

[5] Electing the exemption scheme under § 522(b)(2) permits a debtor to claim the exemptions set forth in § 522 (d), while electing the nonbankruptcy exemptions under § 522(b)(3) allows a debtor to claim those exemptions available under nonbankruptcy law (including relevant state exemptions). See In re Gordon, 479 B.R. 9, 12 (Bankr. D. Mass. 2012), aff'd -- B.R. --, 2013 WL 987768 (B.A.P. 1st Cir. March 13, 2013). "A debtor's ability to claim the federal bankruptcy exemptions is precluded in those states that have opted out of the federal exemptions scheme. Massachusetts has not 'opted out,' and debtors filing in Massachusetts may elect either of the two alternatives." Id. at n.6.

P. 4003(a).  Here, the Debtor opted for the exemptions available under non-bankruptcy law pursuant to § 522(b)(3), enabling her to claim under the Massachusetts Homestead Statute.  The Homestead Statute provides, in relevant part, that:

> [a]n estate of homestead to the extent of the declared homestead exemption in a home may be acquired by 1 or more owners *who occupy or intend to occupy* the home as a principal residence.

MGL ch. 188, § 3 (emphasis supplied).

Undisputed is whether the Homestead Exemption was properly listed on Schedule C (it was); whether the exemption was properly declared or not (it was); the amount of the exemption (if entitled to the exemption, there is no question that Debtor qualified to claim as much as $500,000 in equity of the Florence Property as exempt); or the Debtor's interest in the Florence Property (she enjoyed an undivided interest as tenant by the entirety).  Rather, the issue raised by the Trustee is whether, in light of the Debtor's absence from the property since 2008, she could reasonably claim that on December 12, 2012, the date of case commencement, she "intend[ed] to occupy [the Florence Property] as [her] principal residence."  But the Debtor argues that that issue need never be reached, because the Objection was untimely.

The deadline within which a party in interest may object to a claim of exemption is governed by Bankruptcy Rule 4003(b)(1), which provides in relevant part:

> . . . a party in interest may file an objection to the list of property claimed as exempt *within 30 days after the meeting of creditors held under § 341(a) is concluded* or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

Fed. R. Bankr. P. 4003(b)(1) (emphasis supplied).

5

Strict adherence to the deadline, unless extended by the Court on a request made before expiration of that deadline, is critical. If no timely objection to an unambiguously-described and duly-listed exemption is filed, the property claimed as exempt is *deemed* exempt, regardless of whether the debtor had a colorable basis for claiming the exemption in the first place. Taylor v. Freeland & Kronz, 503 U.S. 638, 642-44, 112 S.Ct. 1644, 118 L. Ed.2d 280 (1992); Mercer v. Monzack, 53 F.3d 1,3 (1st Cir.1995) (distinguishing Taylor on other grounds ).

Here, the Trustee did not seek an extension of the original deadline to object to the Debtor's claimed exemptions. Accordingly, the deadline for filing an objection was fixed at 30 days after the 341 Meeting was *concluded*. But there lies the problem: how does one determine when a 341 Meeting has concluded, absent an affirmative statement by the Chapter 7 trustee that such an event has occurred? The answer to that question has divided the courts for some time.

As well-described by the Bankruptcy Appellate Panel for the First Circuit (the "BAP"), three approaches developed among the courts:

> Under the "bright-line" approach, a meeting continued without a follow-up date w[ould] be deemed to have been concluded on the date of the initial meeting for the purpose of determining the beginning of the thirty-day objection period.
> . . .
>
> Under the "case-by-case" approach, the facts and circumstances w[ould] be examined to determine the conclusion date of the § 341 meeting.
> . . .
>
> [Under t]he "debtor's burden" approach . . . a § 341 meeting w[ould] not terminate until "the trustee so declares or the court so orders" . . . .

6

Newman v. White (In re Newman), 428 B.R. 257, 262-63 (B.A.P. 1st Cir. 2010) (collecting cases) (citations omitted).

In Newman, the BAP Panel did not agree on the appropriate disposition of the appeal. All *did* agree that the "debtor's burden" approach should be rejected – that is, the approach which had been applied by the bankruptcy court below to declare that the 341 meeting in that case had not been concluded. The majority then went on to decide that the bankruptcy court's analysis was flawed regardless of whether analyzed under the "bright-line" approach or the "case-by-case" approach. Accordingly, they voted to reverse, reasoning that the disposition of the appeal did not necessitate a choice between the two remaining approaches. The dissent disagreed, however, opting to adhere to the "case-by-case" approach. And, employing that approach, the dissent found the facts sufficient to support the bankruptcy court's decision below. Accordingly, the dissent would have affirmed, albeit on grounds different than those employed by the bankruptcy court.

Had there been no further developments, this Court would likely have had to choose between the "bright-line" and "case-by-case" approaches in evaluating the facts of this case (or avoid the choice as did the BAP in Newman). But there *has* been a further development – namely, the amendment of Bankruptcy Rule 2003(e). Rule 2003 governs the 341 meeting. In its previous iteration, subsection (e) provided:

> (e) *Adjournment*. The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice.

The language of the Rule had a permissive flavor. Newman, 428 B.R. at 262; Rentas v. Puerto Rico Electric and Power Authority (In re PMC Marketing Corp.), 482 B.R. 74, 80

7

(Bankr. D.P.R. 2012). The lack of any requirement to provide written notice to the debtor or creditors portrayed an informality which belied the requirement to actually announce the date and time of the adjourned meeting. Even the policy of the Executive Office of the United States Trustee (as stated in its "Handbook for Chapter 7 Trustees") described the requirement to announce a specific date and time of the continued meeting in language that suggested the announcement was more an important goal than a requirement.

> The trustee should not routinely continue § 341(a) meetings when the debtor appears. If a trustee must continue the meeting, however, the trustee must, *if at all possible*, announce the continued date to all parties present at the initial meeting, and advise the United States Trustee and*, if necessary*, the clerk of the bankruptcy court of the continued date.

Newman, 428 B.R. at 262 (emphasis supplied.)

But effective December 1, 2011, the language of Rule 2003(e) was amended as follows:

> (e) *Adjournment*. The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time ~~without further written notice~~. *The presiding official shall promptly file a statement specifying the date and time to which the meeting is adjourned.*

Fed. R. Bankr. P. 2003(e) (emphasis supplied).

The amendment to Rule 2003(e), approved by the Supreme Court of the United States, and now requiring that the date and time of an adjourned meeting be identified in advance *and* filed in the case docket, inexorably leads this Court to the conclusion that the "bright-line" approach to determining when a 341 meeting is concluded has been finally adopted to the exclusion of any other. Accordingly, this Court holds that the only method for adjourning a 341 meeting is by complying with the terms of Rule 2003(e) – i.e., announcing the continued date and time at the meeting to be continued,

coupled with the prompt filing of that announcement on the case docket. Accord In re Ramon, 2012 WL 1344353, *2 (Bankr. D.P.R. April 17, 2012).

Here, the 341 Meeting was held on November 6, 2012. No adjournment to a specific date and time was announced at the meeting. Nothing in that regard was filed in the case docket. Therefore, this Court finds and rules that: the 341 Meeting "concluded" on November 6, 2012; the deadline for filing an objection to the Debtor's exemptions was December 6, 2012; and the Trustee's objection filed on December 28, 2012 was untimely.[6]

III.   CONCLUSION AND CODA

For the reasons set forth herein, the Trustee's Objection to the Debtor's Homestead Exemption will be overruled as untimely. And to the extent that one believes that, absent that infirmity, the Objection would have been sustained, one could reach the conclusion that this decision constitutes a windfall for the Debtor and presages a boon to debtors in general. The latter conclusion would be short-sighted. If the Chapter 7 trustee must announce at the 341 meeting the date and time to which it will be continued, then, unless later excused by the Trustee, the debtor and his or her counsel must appear at that continued meeting or risk court sanction. The inconvenience to the trustee of conducting such a continued meeting is not great; the continued meeting is likely to be set for a date and time that the trustee is already scheduled to conduct 341 meetings in other cases. There is, therefore, little additional burden for Chapter 7 trustees. Far greater impacts of such continuances may be visited

---

[6] Perhaps of solace (or not) to the Trustee, the facts of this case mirror those described in In re Goulakos, 456 B.R. 729 (Bankr. D. Mass. 2011), a well-reasoned decision in which the Trustee's objection of the same type was overruled on the merits.

on the debtor (who may miss an additional day's work and pay) and debtor's counsel (possibly unable to justify or collect additional compensation for an additional appearance at the continued meeting). Yet, those burdens are almost always avoidable if debtor's counsel properly prepares – with the benefit of the supporting documentation which should already be in counsel's file and presumably used to prepare the debtor's Schedules and Statement of Affairs – for the Trustee's questions which debtor's counsel should be able to reasonably anticipate.[7]

In any event, all now know where they stand in cases assigned to this Court. The Chapter 7 trustee knows what he or she must do to adjourn a 341 meeting, and debtors and debtors' counsel know that the key to reducing cost and aggravation is to properly prepare for the 341 meeting on the date originally scheduled.

An Order consistent with this Memorandum will be entered forthwith.

DATED: April 8, 2013

_____
Henry J. Boroff
United States Bankruptcy Judge

---

[7] Chapter 7 trustees also frequently advise debtors and their counsel in advance of the 341 meeting as to what documentation should be made available.